**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK by LETITIA JAMES, Attorney General of the State of New York,<br><br>       Plaintiff,<br><br>  v.<br><br>DIOCESE OF BUFFALO, RICHARD J. MALONE, EDWARD M. GROSZ, and EDWARD B. SCHARFENBERGER, in his capacity as Apostolic Administrator for the Diocese of Buffalo,<br><br>      Defendants. | No. 1:21-cv-00189-RA |

**THE CATHOLIC DIOCESE OF BUFFALO'S MEMORANDUM OF LAW IN OPPOSITION TO THE ATTORNEY GENERAL'S MOTION TO REMAND**

Leon F. DeJulius, Jr.
Todd R. Geremia
James M. Gross
JONES DAY
250 Vesey Street
New York, New York  10281-1047

John D. Goetz (*pro hac vice* pending)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219

*Attorneys for Defendants
Catholic Diocese of Buffalo and
Edward B. Scharfenberger*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

    A.    The OAG Initiates This Action Against The Diocese For Its Claimed
Failure To Follow Catholic Church Procedures ........................................ 3

    B.    The Diocese Timely Files A Notice Of Removal To This Court ................ 5

    C.    The OAG Seeks A Pre-Motion Conference On Its Remand Motion ............ 6

ARGUMENT ................................................................................................... 7

I.    DEFENDANTS PROPERLY REMOVED THIS LAWSUIT ......................... 8

    A.    This Action Was Properly Removed Pursuant To 28 U.S.C. § 1441(a) ....... 8

        1.    The OAG's Challenge To Removal Under Section 1441(a) Is
Untimely And Is Therefore Waived ............................................ 9

        2.    In Any Event, The OAG Is Wrong That Section 1441(a) Does Not
Apply In Bankruptcy Cases .................................................... 12

    B.    This Court Also Has Removal Jurisdiction Under 28 U.S.C. § 1452 ......... 15

        1.    The Police Power Exception Does Not Apply Because The OAG Is
Seeking To Adjudicate Church Rules and Procedures ................. 15

        2.    The OAG's Police Powers Do Not Extend To Matters Of Church
Government .......................................................................... 19

II.    THERE IS NO BASIS FOR THIS COURT TO ABSTAIN FROM
ADJUDICATING THIS LAWSUIT ........................................................ 21

    A.    Section 1334(c)(2) Does Not Apply To This Complex Litigation ............. 21

    B.    The OAG's Requests For Permissive Abstention And Equitable Remand
Fail ................................................................................................... 24

CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

### CASES

*Almonte v. Target Corp.*,
    462 F. Supp. 3d 360 (S.D.N.Y. 2020) ........................................................................9

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*,
    368 F.3d 86, 103 (2d Cir. 2004) ..............................................................................14

*Certain Underwriters at Lloyd's, London v. ABB Lummus Glob., Inc.*,
    No. 03 Civ. 7248, 2004 WL 224505 (S.D.N.Y. Feb. 5, 2004) ...............................25

*Chao v. Hospital Staffing Services, Inc.*
    270 F.3d 374 (6th Cir. 2001) ...................................................................................17

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965) .................................................................................................24

*Hernandez v. Conriv Realty Assocs.*,
    116 F.3d 35 (2d Cir. 1997) .........................................................................................7

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
    565 U.S. 171 (2012) ...........................................................................................20, 21

*In re The Diocese of Buffalo, N.Y.*,
    No. 1:20-bk-10322 (Bankr. W.D.N.Y.) ......................................................................3

*In re Gen. Motors LLC Ignition Switch Litig.*,
    69 F. Supp. 3d 404 (S.D.N.Y. 2014) ........................................................................16

*In re MTBE Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) .......................................................................................8

*In re MTBE Prods. Liab. Litig.*,
    522 F. Supp. 2d 557 (S.D.N.Y. 2007) ................................................................12, 13

*In re Nortel Networks, Inc.*,
    669 F.3d 128 (3d Cir. 2011) .....................................................................................18

*In re Queen Elizabeth Realty Corp.*,
    502 B.R. 17 (Bankr. S.D.N.Y. 2013) .......................................................................13

*In re Refco, Inc. Sec. Litig.*,
   628 F. Supp. 2d 432 (S.D.N.Y. 2008)....................................................................22, 23, 24, 25

*In re WorldCom, Inc. Sec. Litig.*,
   293 B.R. 308 (S.D.N.Y. 2003)....................................................................................13, 22, 25

*Kanayama v. KESY LLC*,
   No. 14 Civ. 3405, 2015 WL 1433203 (S.D.N.Y. Mar. 30, 2015) ..........................9, 10, 11, 15

*Krys v. Sugrue*,
   Nos. 08 Civ. 3065, 3086, & 7416, 2008 WL 4700920
   (S.D.N.Y. Oct. 23, 2008) ..............................................................................................23, 24

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ..............................................................................................17

*Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*,
   435 F.3d 127 (2d Cir. 2006).................................................................................................12

*Orange Cnty. Water Dist. v. Unocal Corp.*,
   584 F.3d 43 (2d Cir. 2009)..............................................................................................12, 15

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
   140 S. Ct. 2049 (2020).....................................................................................................19, 20

*Park v. McGowan*,
   No. 11-CV-3454, 2011 WL 4963759 (E.D.N.Y. Oct. 19, 2011)..............................................9

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
   639 F.3d 572 (2d Cir. 2011)..................................................................................................22

*People v. Diocese of Buffalo*,
   Index No. 452354/2020 (N.Y. Sup. Ct.)...................................................................................4

*Phx. Glob. Ventures, LLC v. Phx. Hotel Assocs., Ltd.*,
   422 F.3d 72 (2d Cir. 2005).......................................................................................................9

*Property Clerk v. Smith*,
   No. 00CIV.2133, 2000 WL 1725017 (S.D.N.Y. Nov. 17, 2000) ...........................................12

*Ret. Sys. v. WorldCom, Inc.*,
   368 F.3d 86 (2d Cir. 2004).....................................................................................................14

*Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*,
   426 U.S. 696 (1976)................................................................................................................20

*Siverls-Dunham v. Lee*,
  No. 05 CIV. 7518, 2006 WL 510504, at *2 (S.D.N.Y. Feb. 27, 2006) ............................10, 11

*Solis v. SCA Rest. Corp.*,
  463 B.R. 248 (E.D.N.Y. 2011) ................................................................................................16

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018)................................................................................................1, 7

*Stoe v. Flaherty*,
  436 F.3d 209 (3d Cir. 2006)..................................................................................................24

*Things Remembered, Inc. v. Petrarca*,
  516 U.S. 124 (1995)................................................................................................2, 13, 14

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972)................................................................................................................20

*Zwickler v. Koota*,
  389 U.S. 241 (1967)................................................................................................23, 24

## STATUTES

28 U.S.C. § 1334 ................................................................................................... passim

28 U.S.C. § 1441 ................................................................................................... passim

28 U.S.C. § 1446 .........................................................................................................10

28 U.S.C. § 1447 ................................................................................................... passim

28 U.S.C. § 1452 ................................................................................................... passim

N.Y. Est. Powers & Trusts Law § 8-1.4(m).........................................................................18

N.Y. Not-for-Profit Corp. Law § 112(a)(1) .......................................................................18

Pub. L. No. 80-773, 62 Stat. 869 .......................................................................................13

## U.S. CONSTITUTION AND OTHER AUTHORITIES

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 342-3 (1977)............................................17

S. Rep. No. 95-989, 95th Cong., 2d Sess. 51-2 (1978)..................................................17

U.S. Const. amend. I .................................................................................................. passim

## INTRODUCTION

In February 2020, the Catholic Diocese of Buffalo ("Diocese") filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code, principally to impose an orderly process for administering a large number of negligence claims filed against the Diocese by survivors of sexual abuse.  Months later, in November 2020, the Charities Bureau of the Office of the Attorney General of the State of New York ("OAG") commenced this lawsuit against the Diocese, two of its former Bishops, and its then-Administrator.  This case also addresses the Diocese's treatment of sexual abuse within the Church but not victims' claims under New York law.  Rather, the OAG seeks to enforce the Diocese's compliance with Roman Catholic Canon Law, which incorporates a set of norms and procedures developed by the U.S. Conference of Catholic Bishops for protecting children in the Church and for reconciling with and healing victims of abuse.  The OAG also seeks to impose a Court-appointed monitor to supervise the Diocese's ongoing compliance with these same provisions of Canon Law.

The Diocese properly removed this lawsuit for adjudication in federal court on the jurisdictional basis that it is "related to" the Diocese's bankruptcy proceeding.  The test for "related to" jurisdiction, under 28 U.S.C. § 1334(b), is expansive and is satisfied if the outcome of this action could alter the Diocese's "rights, liabilities, options, or freedom of action" and "in any way" might impact the administration of the Diocese's bankruptcy estate.  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339-40 (2d Cir. 2018).  The OAG's remand motion does not dispute that the Court has bankruptcy, "related to" jurisdiction over this action.  That uncontested jurisdiction, in turn, gave rise to two, independent grounds for removing this case to federal court.  First, under 28 U.S.C. § 1441(a), this action was properly removed by defendants because the Court has "original jurisdiction" over it, pursuant to Section 1334(b).  Second, 28 U.S.C. § 1452(a) also provides for removal by "a party" of an action over which a federal court has subject matter

jurisdiction pursuant to Section 1334, except for civil actions brought "by a governmental unit to enforce such governmental unit's police or regulatory power."

Each of these grounds independently supports removal. Critically, the OAG does not present any jurisdictional challenge to removal here. And the OAG has waived its non-jurisdictional bases for a remand: that the Diocese cannot invoke as a basis for removal either (i) Section 1441(a)—even though it expressly allows for removal of an action over which a federal court has "original jurisdiction" and Section 1334(b) provides for original jurisdiction here—or (ii) Section 1452(a), because the OAG contends that this action is an exercise of its "police power." These bases for remand have been waived because 28 U.S.C. § 1447(c) imposes a mandatory, 30-day deadline for moving to remand on non-jurisdictional bases. Here, the OAG's deadline for making its remand motion was February 9, 2021—30 days after defendants filed their Notice of Removal on January 9, 2021. The OAG did not move until February 22, 2021.

On the merits, too, both of these grounds for removal are proper. There is nothing in the text of either of these removal statutes that supports the OAG's notion that Section 1452(a) is the exclusive ground for removing an action that is "related to" a bankruptcy action. The Supreme Court has so held: "[t]here is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995). As to removal on the alternative ground under Section 1452(a), the OAG's lawsuit is not an exercise of its "police power." The pertinent test for applying this exception is whether the lawsuit seeks to effectuate "public policy" rather than "private rights." The complaint here makes plain that this lawsuit seeks to enforce *Church policy against an individual Diocese*, not any specific public policy. While the OAG invokes state statutes that allow for a cause of action to address "unauthorized" activity by a

single Diocese, the source of *authority* that the OAG invokes in support of those claims is Canon

Law—which the OAG asserts, wrongly, that the Diocese violated and should be ordered to

comply with.  This fails the "public policy" test for fitting into the "police power" exception.  It

also shows, as explained more fully below, that, under binding First Amendment principles of

religious liberty as established by the Supreme Court, the government does not have any

authority, under the purported guise of "police power" or otherwise, to seek to enforce the

Church's compliance with its own rules.

For these and other reasons addressed below, including that there is no proper basis for

the Court to abstain or invoke notions of equity to avoid addressing the significant issues of

federal constitutional law presented here, this lawsuit should remain in federal court.  The

OAG's motion should be denied.

## BACKGROUND

### A.    The OAG Initiates This Action Against The Diocese For Its Claimed Failure To Follow Catholic Church Procedures.

On February 28, 2020, the Diocese filed for bankruptcy protection in the Bankruptcy

Court for the Western District of New York.  The purpose of the bankruptcy was not "to shirk or

avoid responsibility for any past misconduct by clergy or for any decisions made by Diocesan

authorities when addressing that misconduct," but to put in place "an orderly claims

administration process that will ensure a more equitable distribution of funds to creditors,

including victims of abuse" and to "bring about a reorganization of the Diocese that will ensure

that the mission of the Diocese may continue to be fulfilled in service of the Catholic faith."

ECF No. 7, *In re The Diocese of Buffalo, N.Y.*, No. 1:20-bk-10322 (Bankr. W.D.N.Y.).

In the midst of the Diocese's bankruptcy proceeding, the OAG commenced this lawsuit

against the Diocese, Bishop Richard J. Malone, Bishop Edward M. Grosz, and Edward B.

Scharfenberger, then Apostolic Administrator for the Diocese, in the Supreme Court of the State of New York, New York County.  *People v. Diocese of Buffalo*, Index No. 452354/2020 (N.Y. Sup. Ct.).  While the complaint asserts causes of action against the Diocese under New York's Not-For-Profit Corporation Law, Estates, Powers and Trusts Law, and Religious Corporations Law, this action is not based on alleged violations by the Diocese of substantive rules imposed by those statutes.  Rather, the complaint is predicated on the Diocese's alleged failure to abide by internal Catholic Church guidelines promulgated by the U.S. Conference of Catholic Bishops ("Catholic Conference") that have since been adopted as Roman Catholic Canon Law.  *See* accompanying Declaration of Todd R. Geremia & Exs. A & B thereto.

In 2002, the Bishops in the Catholic Conference committed "to a pastoral outreach to repair the breach with those who have suffered sexual abuse and with all the people of the Church" and "to act in a way that manifests our accountability to God, to his people, and to one another in this grave matter."  U.S. Conference of Catholic Bishops, *Charter for the Protection of Children & Young People*, at 3 (2002).  "Those reforms were embodied in the [Catholic Conference's] 2002 *Charter for the Protection of Children and Young People* ('*Charter*') and the *Essential Norms for Diocesan/Eparchial Policies Dealing with Allegations of Sexual Abuse of Minors by Priests or Deacons* ('*Essential Norms*')."  Compl. ¶ 5.  The complaint alleges that the "*Charter* is an agreement among U.S. bishops to adopt and implement certain policies and procedures," and that the "*Essential Norms* convert these and related commitments into canon law, enforceable as the ecclesiastical law that governs the U.S. dioceses."  Compl. ¶ 29.

The thrust of the OAG's lawsuit is that the Diocese has failed to abide by this ecclesiastical law.  While the OAG asserts that Defendants "repeatedly violated New York law," the complaint makes clear that "[t]hese claims are supported by the Diocesan Corporation's

violations of the *Charter* and the *Essential Norms*." Compl. ¶ 62. Section III of the complaint goes on to summarize the various ways that the Diocese allegedly violated Canon Law and other obligations imposed upon the Diocese by the Catholic Church. *See* Compl. ¶¶ 59-105. To remedy alleged harm to the Diocese stemming from putative violations of Canon Law and the Diocese's obligations to the Church, the OAG seeks a multi-pronged injunction and Court-appointed monitor "requiring the Diocesan Corporation and those that administer it to comply with the *Charter*, the *Essential Norms*, and the *Diocesan Policies and Procedures*," which the complaint acknowledges incorporate the *Charter* and *Essential Norms*. Compl. at pp. 213-14. The table attached as Exhibit A to the accompanying Declaration of Todd R. Geremia reflects the OAG's core effort in this action to enforce the Catholic Church's own rules and guidance.

   **B.    The Diocese Timely Files A Notice Of Removal To This Court.**

   The Diocese agreed to accept service of the summons and the OAG's complaint on December 11, 2020. Within 30 days of that date, on January 9, 2021, the Diocese removed this lawsuit to federal court with the consent of all defendants. *See* Notice of Removal, ECF No. 1.

   The Notice of Removal explained that this Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), because the OAG's claims relate to the Diocese's pending Chapter 11 bankruptcy proceeding. ECF No. 1 ¶ 6. The Notice of Removal also identified two independent bases for removal. First, because this Court has original subject matter jurisdiction over this action and because all defendants consented to removal, removal is proper under 28 U.S.C. § 1441(a). ECF No. 1 ¶ 7. Second, removal is proper under 28 U.S.C. § 1452(a). Anticipating that the OAG would contend that Section 1452(a) is inapplicable on the ground that this is a "civil action by a governmental unit to enforce such governmental unit's police or regulatory power," the Notice specifically stated that this "police power" exception does not apply here, both because the OAG unconstitutionally seeks to interfere with internal

Church governance and matters of faith, in violation of the First Amendment, and because the lawsuit does not seek to effectuate public policy.  ECF No. 1 ¶¶ 8-9.

  **C.**  **The OAG Seeks A Pre-Motion Conference On Its Remand Motion.**

  The Diocese's removal of this action on January 9, 2021 started a mandatory, 30-day clock to make a motion to remand this action.  *See* 28 U.S.C. § 1447(c).  The OAG did not make this motion to remand, however, until more than 45 days later, on February 22, 2021.

  After removal, this action was originally assigned to Judge Paul A. Crotty, whose individual practices require a party making most motions to request a pre-motion conference and submit an accompanying letter "setting forth the basis for the anticipated motion."  Individual Practices of Judge Paul A. Crotty, U.S.D.J., Rule 3.D (Jan. 21, 2020).  On January 25, 2021, the OAG submitted a letter in accordance with this practice.  ECF No. 5.  In that letter, the OAG argued that this action "should be remanded for two principal reasons."  ECF No. 5 at 2.  First, the OAG argued that removal was improper under Section 1452(a) because this lawsuit falls within that statute's "police-power exception."  *Id*.  Second, the OAG claimed that "abstention principles require remand, or, alternatively, provide this Court with discretion to remand this action to state court."  *Id*.  Nowhere in the OAG's letter did it address the Diocese's removal of this action pursuant to 28 U.S.C. § 1441(a).

  The Diocese responded to the OAG's letter on January 28, 2021, and noted the OAG's failure to address Section 1441(a) as a statutory basis for removal.  ECF No. 6 at 1-2.  Yet, even after receiving the Diocese's letter, the OAG still did not make any filing prior to February 9, 2021—the OAG's statutory deadline to make a remand motion—to address removal pursuant to Section 1441(a).  Nor did the OAG make a motion to remand this action by then.  Instead, the OAG submitted a letter on January 29, 2021, stating that it "understand[s]" that its "30-day statutory deadline for moving to remand this action" was "extend[ed]" by the Court's setting a

February 11, 2021 conference with respect to the OAG's anticipated remand motion.  *See* ECF No. 9.  Neither Judge Crotty nor the Diocese endorsed that understanding.

On February 9, 2021, Judge Crotty ordered that this action be re-assigned.  The OAG thereafter unilaterally requested and was granted an extension of the date by which to file a remand motion until February 22, 2021, *see* ECF No. 14, without awaiting the Diocese's response to the OAG's request for an extension of time (which asked the Diocese not to oppose the OAG's remand motion on timeliness grounds) or mentioning in that letter to the Court the mandatory nature of the statutory deadline for making a remand motion.  The OAG's remand motion raises not only the arguments set out in the OAG's pre-motion letter to Judge Crotty, but also now asserts, for the first time, that Section 1441(a) is not a ground for removal here.  Both arguments have been waived, and they are not well taken on the merits.

## ARGUMENT

"The basic rules for the removal of cases from state court to federal court are well settled." *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997).  "An action which was originally filed in state court may be removed by a defendant to federal court only if the case could have been originally filed in federal court."  *Id.*

That threshold requirement is concededly satisfied here.  As established in the Diocese's notice of removal, because the OAG's lawsuit "could alter [the Diocese's] rights, liabilities, options, or freedom of action (either positively or negatively)" and otherwise "impacts the handling and administration of the bankruptcy estate," this lawsuit is "related to" the Diocese's Chapter 11 bankruptcy under the expansive test for "related to" jurisdiction, and a District Court therefore has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334(b). *See* ECF No. 1 ¶ 6 (quoting *SPV Osus Ltd.*, 882 F.3d at 339-40).  The OAG does not contest these jurisdictional allegations; they are thus established for purposes of determining whether the

Court has federal subject matter jurisdiction over this action.  *See In re MTBE Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).

The OAG moves for remand on non-jurisdictional grounds that removal is not authorized by 28 U.S.C. §§ 1441(a) & 1452(a), and that the Court should abstain from adjudicating this action or it presents equitable grounds for remand.  The OAG is wrong on each point.

## I.      DEFENDANTS PROPERLY REMOVED THIS LAWSUIT.

Each of the two, independent bases for removal of this action are proper:  (i) 28 U.S.C. § 1441(a) permits removal by a defendant of any lawsuit filed in state court over which a federal court has original jurisdiction; and (ii) 28 U.S.C. § 1452(a) authorizes the removal by any party of claims or causes subject to federal jurisdiction under 28 U.S.C. § 1334.

### A.      This Action Was Properly Removed Pursuant To 28 U.S.C. § 1441(a).

Section 1441(a) provides in pertinent part that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States."  As the notice of removal explained, this action was properly removed pursuant to Section 1441(a) because the Court has original, bankruptcy "related to" jurisdiction over this action pursuant to 28 U.S.C. § 1334(b).  ECF No. 1 ¶ 7.

Notwithstanding this straightforward statutory text, the OAG wrongly contends that Section 1441(a) is unavailable in cases over which a federal court has original jurisdiction under Section 1334(b).  As the OAG would have it, where a federal court has subject matter jurisdiction over an action under Section 1334(b), the action may be removed *solely* pursuant to Section 1452.  Opening Br. 15-16.  That ground for remand—raised for the first time 47 days after Defendants filed their notice of removal—is untimely, and is therefore waived pursuant to 28 U.S.C. § 1447 and binding Second Circuit precedent.  It also fails on the merits.

1.    *The OAG's Challenge To Removal Under Section 1441(a) Is Untimely And Is Therefore Waived.*

28 U.S.C. § 1447(c) provides that a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." This statutory "deadline is plainly mandatory." *Phx. Glob. Ventures, LLC v. Phx. Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005). Indeed, "[a] court generally may not excuse the 30-day limit for non-jurisdictional objections to removal; after 30 days have passed, a court 'lacks authority under § 1447(c) to remand.'" *Park v. McGowan*, No. 11-CV-3454, 2011 WL 4963759, at *1 (E.D.N.Y. Oct. 19, 2011) (quoting *Shapiro v. Logistec USA Inc.*, 412 F.3d 307, 315 (2d Cir. 2005) (alteration omitted)).[1]

The OAG's filing of a pre-motion letter with Judge Crotty does not excuse its failure to file timely a motion to remand. The Second Circuit has not held that a district judge's individual practices may excuse a party's failure to file a timely motion to remand within the 30-day period prescribed by Section 1447(c). *Cf. Kanayama v. KESY LLC*, No. 14 Civ. 3405, 2015 WL 1433203, at *5 (S.D.N.Y. Mar. 30, 2015) (motion to remand filed after 30-day period untimely, even though plaintiff filed a premotion letter within Section 1447(c)'s proscribed 30-day period). Nor, for that matter, do Judge Crotty's pre-motion practices purport to excuse a failure to make a timely remand motion.[2] But, even giving the OAG an unwarranted benefit of the doubt that its pre-motion letter *might be* treated as a timely "motion to remand" under Section 1447(c)—which

---

[1] *See also, e.g., Almonte v. Target Corp.*, 462 F. Supp. 3d 360, 364-65 (S.D.N.Y. 2020) (deeming plaintiff to have "waived [] argument as a basis for remand because the 30-day window for filing a motion to remand applies where the motion is made 'on the basis of any defect other than lack of subject matter jurisdiction'").

[2] *See* Individual Practices of Judge Paul A. Crotty, U.S.D.J., Rule 3.B (Jan. 21, 2020) (stating only in this regard that "[t]he time to Answer a Complaint is preserved as long as the defendant files a pre-motion conference letter by the date the Answer is due").

the OAG itself did not believe[3]—that letter failed to address, and thus waived, a non-jurisdictional ground for removal.

A materially identical situation arose in *Siverls-Dunham v. Lee*, where both the district judge initially assigned to the case (Judge Kram) and the judge to whom the case was later reassigned (Judge Castel) required parties to request a pre-motion conference prior to making a motion to remand by filing a letter that "briefly explain[ed] the legal basis for the motion."  No. 05 CIV. 7518, 2006 WL 510504, at *2 (S.D.N.Y. Feb. 27, 2006).  In accordance with that practice, the plaintiffs submitted a three-page letter "within 30 days of removal" requesting a pre-motion conference in advance of filing a motion to remand, on the grounds that the court lacked diversity jurisdiction.  *Id.* at *1.  When the plaintiffs filed their motion to remand, however, they raised a new issue not addressed in their pre-motion letter:  that all defendants failed to unanimously join in the notice of removal, as required by 28 U.S.C. § 1446.  The plaintiffs argued that "by reason of the premotion conference requirements" and the "use of the words '*inter alia*' to describe the basis for the remand motion" in their pre-motion letter, they were not "untimely in pursuing a motion to remand" on this newly asserted ground.  *Id.* at *2.

Judge Castel rejected this argument and "conclude[d] comfortably" that plaintiffs had waived their new-found argument and it was untimely under 28 U.S.C. § 1447(c).  *Id.* at *3.  The court noted that both its and Judge Kram's "premotion letter requirement required a party to set forth the basis for the intended motion."  *Id.*.  Plaintiffs complied with that requirement by submitting a three-page letter explaining "why the action should be remanded," yet nowhere in that letter did the plaintiffs "raise the possible lack of unanimity as a ground for" remand.  *Id.* The court observed, accordingly, that "[t]he waiver issue does not stand or fall on whether

---

[3] *See* ECF No. 9 (where the OAG wrote on January 29, 2021, after it submitted its letter to Judge Crotty requesting a pre-motion conference, that the OAG "understand[s]" the scheduling of that conference for February 11, 2021, "to extend the 30-day statutory deadline for moving to remand this action").

plaintiffs were thwarted by the pr[e]motion conference requirement…. The fact is that, when they took the opportunity to lay out the basis for a remand motion, plaintiffs never raised the lack of unanimity issue." *Id.* Plaintiffs thus "waived the issue by failing to raise 'lack of unanimity' within 30 days of removal." *Id.*

The circumstances deemed to constitute waiver in *Siverls-Dunham v. Lee* are identical in material respects to what happened here. As in *Siverls-Dunham*, the individual practices of Judge Crotty (to whom this case was previously assigned) required the OAG to request a pre-motion conference and submit an accompanying letter "setting forth the basis for the anticipated motion" to remand. Like in *Siverls-Dunham*, the OAG submitted a three-page letter in accordance with this practice, arguing with citations to case law and statutes that removal was improper under Section 1452 and that the Court should abstain under Section 1334(c). *See* ECF No. 5. Yet, as in *Siverls-Dunham*, nowhere in that letter did the OAG even mention that this action was also removed pursuant to Section 1441(a), let alone challenge that basis for removal. The Diocese even expressly noted that the OAG "fail[ed] to address" Section 1441(a) in its response to the OAG's letter, ECF No. 6 at 2, but the OAG *still* failed to identify the issue within the mandatory, 30-day deadline established by 28 U.S.C. § 1447(c), waiting instead to raise the issue for the first time in its motion papers filed 47 days after removal.

Having failed to challenge removal pursuant to Section 1441(a) prior to February 8, 2021 (30 days after Defendants removed this action), the OAG cannot do so now. Like the lack of unanimity issue in *Siverls-Dunham*, a party's failure to challenge the applicability of a remand statute is a non-jurisdictional defect and is therefore subject to Section 1447(c)'s mandatory, 30-day deadline.[4] Just like in *Siverls-Dunham*, "[t]he fact is that, when [the OAG] took the

---

[4] *See, e.g.*, *Property Clerk v. Smith*, No. 00CIV.2133, 2000 WL 1725017, at *1 (S.D.N.Y. Nov. 17, 2000) (distinguishing between "improper removal (i.e. lack of removal jurisdiction)" and "lack of original subject matter

opportunity to lay out the basis for a remand motion, [it] never raised" any objection to removal under Section 1441(a).  2006 WL 510504, at *3.

The OAG's arguments concerning removal under Section 1441(a) are therefore untimely under Section 1447(c) and may not be considered by the Court.  *See Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 131 (2d Cir. 2006) (Section 1447(c) does not authorize remand on non-jurisdictional grounds "either upon an untimely motion or *sua sponte* more than 30 days after removal").  For this reason alone, the OAG's remand motion should be denied.

> ## 2.    *In Any Event, The OAG Is Wrong That Section 1441(a) Does Not Apply In Bankruptcy Cases.*

Even if the OAG's new argument that Defendants should not be able to remove this action pursuant to Section 1441(a) were timely—and it is not—that argument would fail on the merits.  As noted above, Section 1441(a) provides that "*[e]xcept as otherwise expressly provided by Act of Congress*, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." 28 U.S.C. § 1441(a) (emphasis added).  The OAG seizes upon the italicized phrase to argue that, because another statutory provision (28 U.S.C. § 1452) also addresses removal of claims related to bankruptcy actions—and bars a party from removing actions that constitute an exercise of a government's "police power"—Section 1441(a) cannot be a basis for removing an action even if it is, as here, undisputed that the action is "related to" a bankruptcy case and therefore plainly one over which a federal court has subject matter jurisdiction.  Opening Br. 15.

The OAG is wrong for several reasons.  As a threshold matter, there is nothing in these statutes to support the OAG's artificial reading that Section 1452(a) is the *sole* provision under

---

jurisdiction," because "[t]he former is waivable, … the latter is not" (quoting *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1543-44 (5th Cir. 1991)); *In re MTBE Prods. Liab. Litig.*, 522 F. Supp. 2d 557, 561 & n.29 (S.D.N.Y. 2007) (same); *Orange Cnty. Water Dist. v. Unocal Corp.*, 584 F.3d 43, 50 (2d Cir. 2009) (explaining that "challenges to removal defects under § 1441(a) and (b) [are] waivable").

which a defendant may remove an action that is "related to" a bankruptcy case.  The Supreme

Court recognized this in *Things Remembered, Inc. v. Petrarca*, observing that "[t]here is no

express indication in § 1452 that Congress intended that statute to be the exclusive provision

governing removals and remands in bankruptcy."  516 U.S. at 129.  Nor does the lone district

court decision cited by the OAG, *In re MTBE Products Liability Litigation*, 552 F. Supp. 2d 557

(S.D.N.Y. 2007), support its view that removal of an action that is related to a bankruptcy case

may be accomplished solely pursuant to Section 1452(a).  Indeed, that decision does not even

consider whether Section 1441(a) is a basis for removing a bankruptcy-related action.

Meanwhile, at least one court in this Circuit, relying on the Supreme Court's decision in *Things

Remembered*, has expressly held that Section 1441(a) *does* apply in cases subject to bankruptcy,

related-to jurisdiction under Section 1334(b).  *In re Queen Elizabeth Realty Corp.*, 502 B.R. 17,

21 n.4 (Bankr. S.D.N.Y. 2013) ("The Debtors did not rely on § 1441(a), but § 1441(a) also

applies in bankruptcy cases.").

    The OAG's approach to this issue is also inconsistent with Section 1441(a)'s history.

Congress enacted Section 1441(a) in substantially its current form in 1948.  *See* Pub. L. No. 80-

773, 62 Stat. 869.  Section 1452 was added as a ground for removal more than 35 years later, in

1984.  *See In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 328 (S.D.N.Y. 2003).  Far from

limiting the scope of cases that could be removed pursuant to Section 1441(a), Congress

intended for Section 1452 to *expand* the reach of federal courts over actions that are related to

bankruptcy cases.  As Justice Ginsburg explained in a concurrence in *Things Remembered*,

"Congress, when it added § 1452 to the Judicial Code chapter on removal of cases from state

courts—a chapter now comprising 28 U.S.C. §§ 1441-1452—*meant to enlarge*, not to rein in,

federal trial court removal/remand authority for claims related to bankruptcy cases."  *Things*

*Remembered,* 516 U.S. at 131-32 (Ginsberg, J., concurring) (emphasis added)).

Congress accomplished this objective in three ways.  "First, unlike Section 1441(a), which authorizes *defendants* to remove, the bankruptcy removal statute authorizes *any* 'party,' including plaintiffs, to remove."  *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004).  "Second, because any *one* 'party' can remove under Section 1452(a), removal under that provision, unlike removal under Section 1441(a), does not require the unanimous consent of the defendants."  *Id.*  "Third, whereas the general removal statute, § 1441(a), contemplates removal only from state court, there is no such limitation in Section 1452(a)."  *Id.*

Thus, far from supplanting Section 1441(a) in bankruptcy related cases, Section 1452(a) *supplements* that statute by expanding the scope of bankruptcy-related cases which can be removed to federal court.  *See id.* ("[I]n its every detail, Section 1452(a) is designed to further Congress's purpose of centralizing bankruptcy litigation in a federal forum.").  The OAG's reading would accomplish the opposite:  Section 1452 would now preclude removal of a category of actions that would otherwise be removable pursuant to Section 1441(a).

Finally, the OAG is simply incorrect when it claims that permitting removal of bankruptcy-related cases under Section 1452(a) "would render the police-power exception meaningless."  Opening Br. 15.  That this is incorrect is shown by the differences between Section 1441(a) and Section 1452(a) identified above.  Whereas Section 1452(a) permits *any* party to remove a bankruptcy-related action, Section 1441(a) permits only a *defendant* to remove and only with all co-defendants' consent.  Thus, if a debtor is not a defendant, or a debtor is a defendant but cannot obtain unanimous consent to removal, removal under Section 1441(a) will be unavailable and the police-power exception of Section 1452(a) will preclude removal, where it is applicable.

### B.     This Court Also Has Removal Jurisdiction Under 28 U.S.C. § 1452.

While Section 1441(a) is an independent basis for removing this action—and denying the OAG's motion—Section 1452(a) provides an alternative basis for removal here.  This provision states in pertinent part that a party may remove any claim in an action "other than … a civil action by a governmental unit to enforce such governmental unit's police or regulatory power … if [the] district court has jurisdiction of such claim or cause of action under section 1334."

As noted, the OAG does not dispute that this Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b).  Instead, the OAG contends that Section 1452(a) is not a basis for removal of this action because it qualifies as an exercise of the government's "police or regulatory power."  This argument is, as a threshold matter, waived, because the OAG did not make a timely motion to remand, and the "police power" exception is not addressed to the Court's subject matter jurisdiction.[5]  In any event, the police power exception does not apply here for two reasons.

> 1.     *The Police Power Exception Does Not Apply Because The OAG Is Seeking To Adjudicate Church Rules and Procedures.*

First, Section 1452(a)'s "police power" exception is inapplicable here—and this action should therefore be adjudicated by this Court—because the OAG is seeking to enforce Catholic Church policy, rather than specific provisions of New York public policy.  That is apparent from the complaint, which is predicated on the Diocese's alleged failure to abide by the Catholic Church's own rules and norms, to the alleged determinant of the Diocese and its beneficiaries.[6]

---

[5] *See Orange Cnty. Water Dist.*, 584 F.3d at 50-51 ("If § 1452(a) challenges are not raised within thirty days, we will consider them waived pursuant to § 1447(c)."); *see also Kanayama*, 2015 WL 1433203, at *5 (concluding that a party had waived a challenge to removal when it failed to file the motion within 30 days of removal, notwithstanding that it had filed a letter for a pre-motion conference).

[6] The OAG makes much of the Diocese's bankruptcy counsel's statements at the February 10, 2021 hearing before the Bankruptcy Court that based upon his "initial review, we believe we do not have a stay violation." Opening Br. 12.  But as the portions of the transcript omitted from the OAG's brief make clear, the Diocese's bankruptcy counsel stated that he was "still reviewing" that issue, stated that there "is a possibility that we may

Courts in the Second Circuit invoke two tests to determine whether the "police power exception" applies:  "(1) the 'pecuniary purpose' test (also known as the 'pecuniary interest' test), and (2) the 'public policy' test."  *E.g.*, *Solis v. SCA Rest. Corp.*, 463 B.R. 248, 252 (E.D.N.Y. 2011) (collecting cases).  Because the OAG is not seeking pecuniary relief against the Diocese, Opening Br. 1, it predicates its motion to remand solely upon the "public policy" test.

The "public policy" test "asks 'whether the government seeks to effectuate public policy or to adjudicate private rights.'"  *In re Gen. Motors LLC Ignition Switch Litig.*, 69 F. Supp. 3d 404, 410 (S.D.N.Y. 2014) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005)).  The test is an objective one:  the Court "examine[s] the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case."  *Id.* at 411 (quoting *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001).

The first step in the "public policy" analysis is therefore to look at what rules the government is seeking to enforce.  As shown by the legislative history to the automatic stay provision of the Bankruptcy Code—a statute which "contains an analogous police-power exception" and which therefore guides the analysis under Section 1452(a), *id.* at 410 n.2 (citing *In re MTBE Prods. Liab. Litig.*, 488 F.3d at 132)—"where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or *similar police or regulatory laws*, or attempting to fix damages for violation *of such a law*, the action or proceeding is not stayed under the automatic stay."  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 342-3 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 51-2 (1978) (emphases added). From there, the court looks to whether the suit will benefit the public at large, rather than some

---

make the determination that there is a stay violation," and expressly preserved the Diocese's right to make a stay motion at a later date. Hr'g Tr. 52:1-53:18.  The Diocese's bankruptcy counsel is also not counsel of record in this action and did not, and was not purporting to, address the removal of this action from state court or the OAG's remand motion.

smaller, ascertainable group.  *See Lockyer*, 398 F.3d at 1109.

The Sixth Circuit's decision in *Chao v. Hospital Staffing Services, Inc.* illustrates these principles.  270 F.3d 374 (6th Cir. 2001).  There, the Department of Labor ("DOL") sued the trustee of a bankrupt corporation to enjoin the trustee from moving certain records for employees who were not properly compensated under the Fair Labor Standards Act ("FLSA").  The Sixth Circuit agreed that the provisions of the FLSA purportedly violated, like "[a]ll acts of Congress by definition declare national policy, and lawsuits to enforce those acts necessarily effectuate the public policy of the United States."  *Id.* at 389.  But the Sixth Circuit nonetheless concluded that the "public policy" test was not satisfied because the key question is "whether *a particular lawsuit* is undertaken by a governmental entity in order to effectuate public policy or, instead, to adjudicate private rights."  *Id.*  As the Sixth Circuit explained, not all lawsuits by a governmental entity will satisfy the "public policy" test even if they are brought to effectuate public policies:

> The existence of the public policy test naturally presumes that some suits by governmental units, even though they would effectuate certain declared public policies, will nevertheless be regarded as largely in furtherance of private interests.  An extreme example of such would be a suit by a state attorney general on behalf of a supplier against its debtor-customer to enforce a contract obligation.  Although the suit would effectuate the state's public policy in favor of enforcing contractual obligations or requiring payment of damages, the suit essentially enforces the supplier's private rights against the debtor and would result in a pecuniary advantage to the state-favored supplier vis-à-vis other creditors of the debtor's estate.

*Id.*

The appellate court in *Chao* concluded that the DOL's suit did not satisfy the "public policy" test because, although it would vindicate the public interests underlying the FLSA, the "suit would result in a pecuniary advantage to certain *private parties* vis-à-vis other creditors' interests in the debtor's estate."  *Id.*  Other courts have held similarly.  *See, e.g.*, *In re Nortel Networks, Inc.*, 669 F.3d 128, 141-42 (3d Cir. 2011) (pension proceedings initiated by U.K.

regulators pursuant to the UK Pensions Act of 2004 did not satisfy the "public policy" test because, even though that statute and the "system established by the Act clearly reflect public policy decisions," the lawsuit was "primarily adjudicating private rights").

The "extreme example" of a suit that would not satisfy the public policy test offered in *Chao* is similar to what the OAG's lawsuit is here.  The OAG repeatedly asserts that this lawsuit is about enforcing the Diocese's "secular legal obligations."  Opening Br. 2.  But the OAG's complaint does not principally rely on any substantive provisions of New York law that the Diocese allegedly violated.  The state statutes invoked by the complaint in its counts against the Diocese do not proscribe any conduct or impose any duties at all:  they simply afford the OAG a cause of action against nonprofits corporations "to restrain it from carrying on unauthorized activities."  N.Y. Not-for-Profit Corp. Law § 112(a)(1); N.Y. Est. Powers & Trusts Law § 8-1.4(m) (OAG may commence a proceeding "to secure the proper administration of any trust, corporation or other relationship to which this section applies").

The substantive predicate for the alleged, underlying "unauthorized activities" here is the Diocese's purported failure to follow standards set forth by the Catholic Church in the Catholic Conference's own *Charter*.  *See* Geremia Decl., Ex. A.  The very first paragraph of the complaint makes this clear, alleging that "[f]or nearly two decades, the Diocesan Corporation ignored standards established by the U.S. Conference of Catholic Bishops ('USCCB') in June 2002."  Compl. ¶ 1.  With that introduction to what this lawsuit is about, the complaint proceeds to devote scores of paragraphs to outlining the specific provisions of Catholic Canon Law that the OAG opines the Diocese has failed to follow.  *See, e.g.*, Compl. ¶¶ 59-105; Geremia Decl., Ex. A.  While the OAG's motion repeatedly seeks to characterize these alleged "violations" of Church rules as "breache[s] [of the Diocese's] secular fiduciary duties," Opening Br. 11, nothing

in either the OAG's complaint or its motion identifies any source of "secular" law that imposes these allegedly violated duties.  The lawsuit is, at its core, not seeking to vindicate public policy but *Catholic Church* policy.  Indeed, the complaint expressly alleges that the asserted causes of action are "are supported by the Diocesan Corporation's violations of the *Charter* and the *Essential Norms*," Compl. ¶ 62; *see also* Geremia Decl., Ex. A.

This case is thus not at all like the SEC enforcement actions or IRS administrative actions cited by the OAG in support of its "police powers" argument.  *Cf.* Opening Br. 10.  Unlike in those cases, the OAG is not seeking to enforce specific public policy enacted by a legislative body.  Instead, the OAG attempts to enforce the Diocese's compliance with the Catholic Church's own, internal rules and procedures for the benefit of the Diocese and those it serves. *See* Geremia Decl., Ex. A.  That is not an effort to enforce "public policy" but to enforce Church policy.  It is also a direct affront to the Diocese's First Amendment rights, and therefore not a valid exercise of any state authority, "police power" or otherwise, as the Diocese next explains.

2.    *The OAG's Police Powers Do Not Extend To Matters Of Church Government.*

The police power exception to Section 1452(a) is also inapplicable here because what the OAG seeks to accomplish through this lawsuit—to enforce the Diocese's compliance with the Church's own procedures and norms—is outside the scope of the government's authority.

The First Amendment's "Religion Clauses protect the right of churches and other religious institutions to decide matters 'of faith and doctrine' without government intrusion." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 186 (2012)). "This does not mean that religious institutions enjoy a general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that are essential to

19

the institution's central mission." *Id.*; *see also Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 714 n.8 (1976) ("It is not to be supposed that the judges of the civil courts can be as competent in the ecclesiastical law and religious faith of all these bodies as the ablest men in each are in reference to their own." (quoting *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 729 (1872)).

Issues of internal church governance and matters of faith are exclusively for the Church and are "beyond the power of the State to control." *Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972). Indeed, because "[s]tate interference in" matters of faith and doctrine "would obviously violate the free exercise of religion," the Supreme Court has made clear that "any attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion." *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2060. "The First Amendment outlaws such intrusion." *Id.*

As the plain text of the complaint shows, "inquiring into whether the Church had followed its own procedures" is precisely what the OAG's lawsuit attempts to do here. The complaint here is not predicated on any local, state, or federal legal requirements purportedly violated by the Diocese. Rather, the OAG seeks injunctive relief requiring the Diocese to comply with the Catholic Conference's *Charter* and Canon Law, from which the OAG asserts the Diocese has deviated. Whether the Diocese is in compliance with the *Charter* and Canon Law, however, is precisely the type of "matter[] of faith and doctrine" that the U.S. Constitution removes from the police and regulatory powers of the state. *See Hosanna-Tabor*, 565 U.S. at 186. As the Supreme Court has noted in an analogous context, "by inquiring into whether the Church had followed its own procedures, the State Supreme Court had 'unconstitutionally undertaken the resolution of quintessentially religious controversies." *Id.*

The OAG's only response to these authorities is to note that they "concern the First Amendment, but none are in the context of a bankruptcy or application of the police-power exception."  Opening Br. 14.  That is not a meaningful distinction or even an attempt to engage with the substance.  The key point here is that, under bedrock Religious Clause jurisprudence, the OAG lacks *any* authority to use a civil action to scrutinize a religious institution's compliance with its own, internal doctrines and norms, whether that authority is characterized as "police power" or some other source of putative authority.  The police-power exception of Section 1452(a) therefore does not apply here and is not a basis for remanding this action.

## II.   THERE IS NO BASIS FOR THIS COURT TO ABSTAIN FROM ADJUDICATING THIS LAWSUIT.

As set out above, the Court has subject matter jurisdiction over this lawsuit and it was properly removed pursuant to both Section 1441(a) and, separately, Section 1452(a).  The OAG nonetheless argues that the Court should abstain from exercising its subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1334(c) and equitable principles.  There is no basis for invoking either of these non-jurisdictional grounds for remand here.

### A.   Section 1334(c)(2) Does Not Apply To This Complex Litigation.

Section 1334(c)(2) provides that "in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."  28 U.S.C. § 1334(c)(2).  A party seeking mandatory abstention pursuant to Section 1334(c)(2) must *prove*, *inter alia*, that the "action can be 'timely adjudicated' in state court."  *In re WorldCom*, 293 B.R. at 331.

21

As a threshold matter, the OAG does not even try to demonstrate that this action can be timely adjudicated in state court.  Movants seeking abstention must present *evidence* to satisfy this requirement, *see, e.g.*, *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 445 (S.D.N.Y. 2008), but the only assertion in the OAG's motion that even touches on this issue is not evidence but a conclusory—and inapposite—statement that the Diocese "does not complain of a state court delay or backlog in its Notice of Removal."  Opening Br. at 17.  That does not suffice to demonstrate that this action can be timely adjudicated in state court.

Even aside from this failure of proof, the OAG's presentation overlooks a key factor in the abstention analysis that, when "the legal issues in a case are especially complex, the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion relative to the other forum."  *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011)*.  For instance, in *In re Refco, Inc. Securities Litigation*, the court concluded that a plaintiff's complaint raising exclusively issues of Illinois law was not subject to mandatory abstention even though (unlike the OAG here) the plaintiff had submitted *evidence* showing that "cases assigned to the commercial calendar" in Illinois state court "are, by and large, handled efficiently and expeditiously."  628 F. Supp. 2d at 445.  The court did not disagree.  It nonetheless concluded that plaintiff's state law claims were not subject to an abstention-based remand because they were "intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court."  *Id.* at 446 (quoting *In re Glob. Crossing, Ltd. Sec. Litig.*, 311 B.R. 345, 349 (S.D.N.Y. 2003)).  "Whatever might be true in the general run of cases filed in Illinois state court, this action is clearly distinguishable, constituting 'but one piece of a much larger, extremely complex litigation

puzzle.'"  *Id.*  Other courts have held similarly.  *See, e.g.*, *Krys v. Sugrue*, Nos. 08 Civ. 3065, 3086, & 7416, 2008 WL 4700920, at *9-10 (S.D.N.Y. Oct. 23, 2008).

This Court is far better suited to adjudicate this dispute than the state court.  First, while the OAG asserts that "[t]he claims to be heard are based on exclusively state law standards," that is simply not the case.  The OAG's causes of action against the Diocese, while presented under two New York statutes, are substantively predicated on the Diocese's alleged failure to comply with the Catholic Conference's *Charter* and Canon Law.  *See supra* Part I.B.1.  New York state courts do not have any greater expertise in adjudicating those issues than this Court.

Further, the predominating legal issues presented by this case arise under the First Amendment of the U.S. Constitution—a quintessential circumstance where federal courts do *not* abstain from exercising their jurisdiction.  While state courts are competent to adjudicate federal constitutional questions, longstanding U.S. Supreme Court precedent confirms that it is inappropriate for a federal court to abstain from addressing issues of federal constitutional law.  *See, e.g.*, *Zwickler v. Koota*, 389 U.S. 241, 248 (1967) ("We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.").  That principle applies with particular force in cases like this one raising First Amendment challenges.  As the Supreme Court has recognized in analogous abstention contexts, "the abstention doctrine is inappropriate for cases such as the present one where … statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities."  *Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965).

The OAG does not and cannot dispute that whichever court ultimately adjudicates this lawsuit will need to address the Diocese's First Amendment challenge. While the OAG simply declares that the "appropriate place" to address this issue of federal constitutional law is in state court, *see* Opening Br. 18, that is directly contrary to the notion of abstention. "Section 1334(c)(2) is based on comity." *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006). But comity concerns are decidedly not implicated when a case in federal court, like this one, turns on a question of federal constitutional law. *See Zwickler*, 389 U.S. at 251-52 ("For the recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law." (internal quotation marks omitted)).

Finally, like the state-law claims at issue in *In re Refco* and *Krys*, the OAG's lawsuit is intertwined with the Diocese's bankruptcy. The Diocese is not only forced to expend additional resources defending this separate lawsuit, resources which would otherwise go to its creditors and, specifically, to victims of abuse. But, if the OAG is ultimately successful, its compound request for multiple forms of injunctive relief—and, significantly, the cost to the Diocese of providing that relief—will undoubtedly impact the Diocese's plan of reorganization in its parallel Chapter 11 proceeding. Indeed, the Diocese removed this action to federal court precisely because of the multi-layered impact that this lawsuit has on its bankruptcy proceeding.

### B.   The OAG's Requests For Permissive Abstention And Equitable Remand Fail.

Finally, the OAG's alternative requests for either permissive abstention or equitable remand fail for many of the same reasons.

Section 1334(c)(1) provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding … related to a case under title 11." 28 U.S.C. § 1334(c)(1). This is an exceptional step. As one court in this district put it, "[f]ederal courts …

must be 'sparing' in their exercise of discretionary abstention, because they possess a 'virtually unflagging obligation to exercise the jurisdiction given them." *In re Refco*, 628 F. Supp. 3d at 446 (internal citations and alterations omitted). Section 1452(b) likewise permits a court to remand any cause of action removed pursuant to Section 1452(a) "on any equitable ground"; this standard is "virtually identical to the factors for discretionary abstention pursuant to § 1334(c)(1)." *Certain Underwriters at Lloyd's, London v. ABB Lummus Glob., Inc.*, No. 03 Civ. 7248, 2004 WL 224505, at *8 (S.D.N.Y. Feb. 5, 2004).

"Relevant considerations in determining whether to abstain pursuant to § 1334(c)" or equitably remand under § 1452(a) "include 'comity and federalism, judicial economy, and efficiency.'" *In re Refco*, 628 F. Supp. 2d at 446 (quoting *In re WorldCom*, 293 B.R. at 332). Specifically, among other factors, a court should evaluate "the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention"; "the extent to which state law issues predominate over bankruptcy issues"; and "the difficulty or unsettled nature of the applicable state law." *In re WorldCom*, 293 B.R. at 332.

As already discussed, each of those factors weighs heavily in favor of keeping this action in federal court. This case does not present a unique issue of New York state law. Indeed, this case is not substantively predicated on New York law at all. Rather, the Court must assess whether the OAG's claims are barred by the Religions Clauses of the First Amendment and whether the Diocese has abided by its own ecclesiastical norms and laws. Nothing cited by the OAG warrants application of either discretionary abstention or equitable remand here.

## CONCLUSION

The Court should deny the OAG's motion to remand.

Dated:   New York, New York                    Respectfully submitted,
           March 15, 2021

/s/ *Leon F. DeJulius, Jr.*

Leon F. DeJulius, Jr.
Todd R. Geremia
James M. Gross
JONES DAY
250 Vesey Street
New York, New York  10281-1047
Tel: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com
trgeremia@jonesday.com
jgross@jonesday.com

John D. Goetz (*pro hac vice* pending)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219
Tel: (412) 394-7911
Fax: (412) 394-7959
jdgoetz@jonesday.com

*Attorneys for Defendants*
*Diocese of Buffalo and*
*Edward B. Scharfenberger*

**<u>CERTIFICATE OF SERVICE</u>**

I, Leon F. DeJulius, Jr., a lawyer admitted to practice in this Court, hereby certify that, on March 15, 2021, I caused the foregoing document to be served upon all counsel of record via the Court's CM/ECF filing system.

/s/ *Leon F. DeJulius, Jr.*
Leon F. DeJulius, Jr.
