# EXHIBIT B

| Paragraphs in the Complaint Expressly Alleging That a Defendant Violated a Provision of New York State Law ||
|---|---|
| No. | Complaint Paragraph and Allegation (Emphasis Added) |
| 1. | 3. As set forth below, through their actions and inactions in response to the sexual abuse crisis, **the Diocesan Corporation and its two most senior leaders, Defendants former Bishop Richard J. Malone and former Auxiliary Bishop Edward M. Grosz, violated multiple provisions of the Not-for-Profit Corporation Law ("N-PCL") and Estates, Powers and Trusts Law ("EPTL")**. These provisions expressly require the Diocesan Corporation to operate in a manner consistent with the public policy of the State of New York and to properly administer itself. Malone and Grosz also failed to meet basic fiduciary duties of care and loyalty by ignoring the Diocesan Corporation's own stated standards for addressing abuse allegations and preventing future abuse. |
| 2. | 10. The Diocesan Corporation's compliance with the *Charter*, the *Essential Norms*, and its own policies and procedures is vital to ensuring the accountability and transparency that the Diocese owes its beneficiaries. **The conduct discussed throughout this Complaint denied beneficiaries the promise of these critical, institutional reforms and violated clear standards of care and fiduciary loyalty required by New York law**. For example, the Diocesan Corporation sheltered accused priests from adjudication and public disclosure by not referring them to the Vatican. The Diocesan Corporation also misused or wasted its charitable assets by supporting priests, who it considered to have committed sexual abuse. For these reasons, Court intervention is justified and necessary to ensure that the Diocesan Corporation and its leadership comply with their own mandates and governing law to address the tragic and longstanding crisis of sexual abuse and to ensure that the Diocesan Corporation properly addresses future allegations of abuse. |
| 3. | 12. The Diocesan Corporation is the secular legal embodiment of the Diocese of Buffalo, a juridic person recognized under Roman Catholic canon law. The juridic person of the Diocese was canonically established in April 1847. Thereafter, a corporation was formed in October 1897 to constitute the Diocesan Corporation under New York law. That initial corporation was dissolved, and the Diocesan Corporation as it exists today was reincorporated in May 1951 by a special act of the New York State Legislature. **This corporation is governed by the provisions of section 5 of the RCL, which give the trustees of the corporation "the custody and control of all the temporalities and property . . . belonging to the corporation"; require that they "shall administer the same in accordance with the discipline, rules and usages of the corporation and of the ecclesiastical governing body, if any, to which the corporation is subject, and with the provisions of law relating thereto, for the support and maintenance of the corporation"; and prohibit them from using such "property or revenues for any other purpose or divert the same from such uses."** The 1951 special act provides that the three trustees of the Diocesan Corporation are the bishop, vicar general, and chancellor. A vicar general is a priest appointed by a diocesan bishop to function as his principal deputy in the exercise of the bishop's |

| | |
|---|---|
| | administrative authority in a diocesan corporation. The chancellor is an official appointed by the diocesan bishop and primarily responsible for a diocese's maintenance of its files or archives. |
| 4. | 25. Pursuant to RCL section 2-b(1), together with N-PCL section 112(a)(1), the Attorney General is authorized to bring an action **to restrain the Diocesan Corporation from carrying on unauthorized activities, including activities in violation of the Penal Law or the public policy of the State of New York.** The Attorney General may also seek an accounting for the neglect of, failure to perform, or other violation of a director's or officer's duties related to the management and disposition of corporate assets. N-PCL § 720(a). |
| 5. | 26. The EPTL also applies to this action. As a corporation that holds and administers property for a charitable purpose, **the Diocesan Corporation is a "trustee" subject to the provisions of the EPTL.** Bishop Malone and Auxiliary Bishop Grosz, as officers of the Diocesan Corporation, are also "trustees" under the EPTL. Pursuant to the EPTL, each director, officer, trustee, or fiduciary of a charitable corporation, including the Diocesan Corporation, has an obligation to properly administer that corporation's assets, to avoid waste, and to adhere to their fiduciary duties. |
| 6. | 27. **Pursuant to EPTL section 8.1-4(m), the Attorney General may institute appropriate proceedings to secure the proper administration of any charitable corporation subject to the EPTL, including the Diocesan Corporation.** |
| 7. | 59. **When the Defendants were faced with alleged clergy sexual abuse of minors, in accordance with secular, fiduciary duties and the obligation to properly administer the Diocesan Corporation pursuant to the N-PCL and EPTL, the Defendants were required to (a) ensure that the Diocesan Corporation had adequate policies in place to prevent the sexual abuse of minors; (b) respond to sexual abuse allegations; and (c) confirm that their policies were followed.** |
| 8. | 62. **The Defendants repeatedly violated New York law by breaching their fiduciary duties; improperly administering the Diocesan Corporation and the temporalities and property belonging to the corporation; and engaging in unauthorized activities.** These claims are supported by the Diocesan Corporation's violations of the *Charter* and the *Essential Norms*. <br><br> Specifically, the Defendants failed to (a) conduct sufficient, timely, or independent internal investigations into sexual abuse allegations; (b) seek or reasonably document the DRB's assessments of sexual abuse allegations; and (c) refer or timely refer accused priests to the CDF, as required by the discipline, rules, and usages of the corporation and ecclesiastical governing body. |
| 9. | 100. **The Diocesan Corporation and its agents repeatedly prepared and maintained false or misleading business records regarding accused priests in violation of New York law.** |

| | |
|---|---|
| 10. | 102. In several instances, the **Diocesan Corporation's internal records falsely describe a priest as "retired," on "medical leave," or on "sabbatical," where the priest had actually been removed from ministry because of either sexual abuse allegations or the Diocesan Corporation's finding that the priest had sexually abused a minor. At times and in connection with drafting internal business records, the Diocesan Corporation also publicly announced the false or misleading description of the priest's removal from ministry.** These internal records and public statements omitted any reference to or information regarding sexual abuse allegations. |
| 11. | 103. Further, the Diocesan Corporation issued letters of good standing and similar recommendations that enabled accused priests to minister or publicly hold themselves out as priests in other dioceses. In these letters, the Diocesan Corporation generally gave assurances that the accused priests were in good standing and that the Diocesan Corporation was unaware of any risk these priests could present to the public or to minors, in particular. **The Diocesan Corporation provided these letter-endorsements despite documented knowledge that contradicted the letters' unconditional recommendations and assurances of good standing.** |
| 12. | 104. **By creating these false or misleading records, the Diocesan Corporation covered up sexual abuse allegations and its response to these allegations.** This practice also prevented complainants from obtaining an accurate record of the alleged conduct if they sought the records through litigation or by less formal requests. Falsified records further prevented the Diocesan Corporation from accurately documenting the problem of alleged sexual abuse and implementing appropriate policies and procedures to address the problem. |
| 13. | 737. **The Diocesan Corporation is a trustee under section 8-1.4 of the EPTL.** |
| 14. | 741. **Because of the above acts and omissions, the Diocesan Corporation and its assets were improperly administered under section 8-1.4 of the EPTL.** Therefore, to secure the proper administration of the Diocesan Corporation, the Attorney General seeks injunctive relief, including the appointment of an independent compliance auditor as detailed in the Prayer for Relief. |
| 15. | 743. Section 112(a)(1) of the N-PCL authorizes the Attorney General to commence an action against a corporation "to restrain it from carrying on unauthorized activities." **The Diocesan Corporation is subject to the RCL and relevant provisions of the N-PCL, including section 112(a)(1)**. Pursuant to section 2-a of the RCL, the RCL applies to corporations, like the Diocesan Corporation, which were created by special acts. |
| 16. | 747. **Based on the above acts and omissions, the Diocesan Corporation violated section 112(a)(1) of the N-PCL.** Therefore, the Attorney General seeks injunctive relief, including the appointment of an independent compliance auditor as detailed in the Prayer for Relief and/or a temporary and permanent restraining order under New York law and section 112(b)(3) of the NPCL. |

| | |
|---|---|
| 17. | 749. **Bishop Malone and Auxiliary Bishop Grosz were fiduciaries, trustees, or de facto directors or officers of the Diocesan Corporation and, as such, owed fiduciary duties to the Diocesan Corporation pursuant to section 717 of the N-PCL and New York law.** |
| 18. | 750. **The Diocesan Corporation is subject to the RCL and relevant provisions of the NPCL.** Pursuant to section 2-a of the RCL, the RCL applies to corporations, like the Diocesan Corporation, which were created by special acts. Pursuant to section 2-b(1) of the RCL, the NPCL, with certain exceptions not relevant here, applies to every corporation that is also subject to the RCL. |
| 19. | 753. **Based on the above acts and omissions, Bishop Malone and Auxiliary Bishop Grosz breached their fiduciary duties to the Diocesan Corporation and its beneficiaries and are thus liable under sections 720(a)(1)(A) and 720(a)(1)(B) of the N-PCL for their (a) "neglect of, or failure to perform, or other violation[s] of [their] duties in the management and disposition of corporate assets" or (b) the "loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation[s] of [their] duties."** Accordingly, Malone and Grosz should be enjoined from serving as a director, trustee, officer, or equivalent position of any not-for-profit or charitable organization incorporated or authorized to conduct business or solicit charitable donations in the State of New York, except that such injunction shall not bar them from serving in a ministerial, pastoral, or spiritual role. |
| 20. | 754. **Bishop Malone and Auxiliary Bishop Grosz were trustees of the Diocesan Corporation under section 8-1.4 of the EPTL** and, as such, were responsible for the proper administration of the Diocesan Corporation and the Diocesan Corporation's charitable assets. |
| 21. | 757. **Pursuant to the EPTL, Bishop Malone and Auxiliary Bishop Grosz owed fiduciary duties to the Diocesan Corporation and its beneficiaries and are thus liable under the EPTL** for damages resulting from loss or waste of corporate assets, including improper compensation and benefits provided to priests accused of sexually abusing minors. |
| 22. | 759. **Based on the above acts and omissions, Bishop Malone and Auxiliary Bishop Grosz violated section 8-1.4 of the EPTL.** Accordingly, Malone and Grosz should be enjoined from serving as a director, trustee, officer, or equivalent position of any not-for-profit or charitable organization incorporated or authorized to conduct business or solicit charitable donations in the State of New York, except that such injunction shall not bar them from serving in a ministerial, pastoral, or spiritual role. |
| 23. | Prayer for Relief. 1. Ordering the Diocesan Corporation and Bishop Scharfenberger, as Apostolic Administrator for the Diocesan Corporation, to comply with, and **enjoining them from further violating: (a) their legal obligations under the EPTL, RCL, and N-PCL** to ensure that the Diocesan Corporation and its charitable assets are properly administered and that the Diocesan Corporation's charitable beneficiaries are protected by, among other things, requiring the Diocesan Corporation and those that administer it to comply with the *Charter*, the *Essential Norms*, and the Diocesan Policies and |

|  | Procedures and (b) their obligations referred to in subsection (a) of this paragraph that require the Diocesan Corporation to:… |