UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK,
By LETITIA JAMES, Attorney General of the
State of New York,

                            Plaintiff,

             -against-

DIOCESE OF BUFFALO, RICHARD J. MALONE,
EDWARD M. GROSZ, and EDWARD B.
SCHARFENBERGER, in his capacity as Apostolic
Administrator for the Diocese of Buffalo,

                    Defendants.

Case No. 21-CV-00189 (RA)

[State Court Index No. 452354/2020]

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE NEW YORK STATE ATTORNEY GENERAL'S MOTION
TO REMAND THIS ACTION TO STATE COURT**

**PRELIMINARY STATEMENT** ............................................................................. 1

**ARGUMENT** ......................................................................................................... 2

    **I.**    **THE ATTORNEY GENERAL'S ACTION SHOULD BE REMANDED PURSUANT TO 28 U.S.C. §§ 1452 AND 1334 BECAUSE IT IS AN ACTION TO ENFORCE HER POLICE POWER UNDER STATE LAW.** ............................... 2

        **A.**    **THE AG ACTION IS BROUGHT TO ENFORCE THE ATTORNEY GENERAL'S POLICE POWERS OVER CHARITIES SUCH AS THE DIOCESE.** ............................... 2

        **B.**    **DEFENDANTS DO NOT DISPUTE THAT THE FRAMEWORK OF FEDERAL REMOVAL LAWS REJECTS THEIR INTERPRETATION OF THE GENERAL REMOVAL STATUTE.** ............... 4

        **C.**    **SECTION 1334(C)(2) REQUIRES THIS COURT TO ABSTAIN FROM HEARING THE ATTORNEY GENERAL'S CLAIMS.** ....................... 5

        **D.**    **THE DISCRETIONARY REVIEW PRESERVED BY SECTIONS 1334(C)(1) AND 1452(B) SEPARATELY CALLS FOR REMAND.** ................. 7

    **II.**  **DEFENDANTS DO NOT DISPUTE THAT A FIRST AMENDMENT DEFENSE DOES NOT CREATE FEDERAL SUBJECT-MATTER JURISDICTION.** .................................................................................. 8

    **III.** **THE ATTORNEY GENERAL DID NOT WAIVE OBJECTIONS BY COMPLYING WITH COURT-ORDERED PROCEDURES FOR THIS MOTION.** ................................................................................. 8

**CONCLUSION** ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams v. Temple of the Lost Sheep, Inc.*,
148 Misc. 2d 825 (N.Y. Sup. Ct. 1990) ................................................................3

*BGC Partners, Inc. v. Avison Young (Canada), Inc.*,
919 F. Supp. 2d 310 (S.D.N.Y. 2013)..................................................................6

*California Public Employees' Retirement System v. WorldCom, Inc.*,
368 F.3d 86 (2d Cir. 2004)....................................................................................4

*Franchise Tax Board v. Constr. Laborers Vacation Trust*,
463 U.S. 1 (1983)..................................................................................................8

*Fried v. Lehman Bros. Real Estate Associates III, L.P.*,
496 B.R. 706 (S.D.N.Y. 2013)..........................................................................7, 9

*In Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
639 F.3d 572 (2d Cir. 2011)..................................................................................7

*In re AOG Entertainment, Inc.*,
569 B.R. 563 (Bankr. S.D.N.Y. 2017)...................................................................7

*Koppell v. Long Island Soc'y*,
163 Misc. 2d 654 (N.Y. Sup. Ct. 1994) ................................................................3

*Multibank, Inc. v. Access Global Capital LLC*,
594 B.R. 618 (Bankr. S.D.N.Y. 2018)...............................................................6, 7

*People v. Zymurgy, Inc.*,
233 A.D.2d 178 (1st Dep't 1996) ..........................................................................3

*Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*,
2012 WL 4794450 (S.D.N.Y. 2012)......................................................................8

*Things Remembered, Inc. v. Petrarca*,
516 U.S. 124 (1995)..............................................................................................5

*Tilton v. MBIA, Inc.*,
620 B.R. 707 (S.D.N.Y. 2020)............................................................................10

**FEDERAL STATUTES**

28 U.S.C.

§ 1334...................................................................................................................*passim*
§ 1441...................................................................................................................*passim*
§ 1447......................................................................................................................5, 9
§ 1452...................................................................................................................*passim*

## PRELIMINARY STATEMENT

The Attorney General commenced this action against Defendants the Diocese of Buffalo (the "Diocese"), former Bishop Richard Malone, and former Auxiliary Bishop Edward Grosz in the Supreme Court of New York in her capacity as the principal law enforcement officer in the State and the regulator of New York charitable organizations and their fiduciaries (the "AG Action"). The AG Action seeks to hold Defendants responsible for failing to properly administer the Diocese in accordance with the law and public policy of New York and for failing to take adequate steps to protect minors from sexual abuse by clergy and other diocesan employees. The Attorney General's claims are exclusively premised on state law and represent textbook examples of the exercise of her police power that are not removable and must be remanded to state court. As set forth in detail below, in a misguided attempt to avoid remand, Defendants have mischaracterized the nature of the Complaint's allegations and have offered strained interpretations of the law that should not be credited.

The Attorney General's Complaint is not, as Defendants argue, targeted at enforcing internal church policies. Rather, her claims in this action are based on the failure by the corporate and individual Defendants to fulfill their secular duties to properly administer the Diocese, an entity governed by New York's Religious Corporation Law and Not-For-Profit Corporation Law ("N-PCL"). Section 717 of the N-PCL makes clear the responsibility of the individual defendants to discharge the duties of their respective positions in good faith and with the care of an ordinarily prudent person in a like position. The Complaint cites Defendants' failure to follow their own policies as evidence that they failed to fulfill those secular duties. In addition, the Complaint also specifically identifies other breaches of secular duties to properly respond to sexual abuse allegations, including Defendants' failures to: (i) adequately monitor priests; (ii) prepare accurate business records; (iii) publicly disclose the true reasons for certain

priests' absences; and (iv) regard the risks that certain priests could sexually abuse others.

The Attorney General's action to rectify a serious public threat is precisely the type of police-power action that must be remanded. This result is not only mandated by 28 U.S.C. § 1452(a), the bankruptcy removal statute, which specifically prohibits the removal of an action to enforce police powers, but also by 28 U.S.C. § 1334(c), which requires abstention when, based solely on the action's relationship to a bankruptcy, a party seeks to remove a state law action that could be timely adjudicated in state court. Defendants misinterpret the law when they assert that the police-power exception does not apply when a debtor removes under 28 U.S.C. § 1441. The legislative intent reflected in § 1452(a) to exclude actions involving the exercise of police powers from removal would be eviscerated if a defendant could simply use § 1441 to avoid that result. In addition, as is set forth in detail below, even if the claims at issue did not mandate abstention, equitable principles of efficiency and comity weigh in favor of remand.

Finally, there is no merit to Defendants' argument that the Attorney General waived her objections to removal. The Attorney General timely sought leave to move to remand and, in doing so, identified the grounds on which she seeks remand. Indeed, Judge Crotty's rules prohibited her from moving earlier and, as soon as the case was reassigned, she requested permission to move and made the motion according to the schedule approved by this Court. In addition, the Attorney General's arguments that the case should be remanded under § 1452(b) and § 1334(c) are jurisdictional and are not subject to waiver.

## ARGUMENT

I.   **THE ATTORNEY GENERAL'S ACTION SHOULD BE REMANDED PURSUANT TO 28 U.S.C. §§ 1452 AND 1334 BECAUSE IT IS AN ACTION TO ENFORCE HER POLICE POWER UNDER STATE LAW.**

   A.   **The AG Action Is Brought To Enforce the Attorney General's Police Powers Over Charities Such as the Diocese.**

The Attorney General's motion to remand identifies the important public policies her

2

action will support: ensuring that charitable organizations are properly administered and take all necessary steps to prevent and respond to allegations of sexual abuse of minors and other vulnerable individuals.  It is beyond reasonable dispute that protecting minors from sexual abuse is a valid exercise of the Attorney General's police powers and, not surprisingly, Defendants do not attempt to do so (and, instead, mischaracterize the nature of the action).

Here, the Complaint cites the New York statutes that give the Attorney General authority to regulate charitable organizations such as the Diocese.  These laws authorize her to ensure the proper administration of such organizations and to seek a court order to enjoin an organization from engaging in "unauthorized activities."  N-PCL § 112(a)(1); EPTL § 8-1.4(m).  They also provide authority for the Attorney General to proscribe misconduct that violates other laws.  For example, the Attorney General has used these statutes: "to institute proceedings to secure the proper administration of non-profit corporations"; *see Koppell v. Long Island Soc'y*, 163 Misc. 2d 654, 659 (N.Y. Sup. Ct. 1994) (seeking to enjoin society for the prevention of cruelty to children from misrepresenting itself as a state agency); to investigate religious corporations for fraud or improper use of charitable funds, *Abrams v. Temple of the Lost Sheep, Inc.*, 148 Misc. 2d 825 (N.Y. Sup. Ct. 1990); and to dissolve a non-profit corporation that, *inter alia*, appeared to violate child pornography laws.  *People v. Zymurgy, Inc.*, 233 A.D.2d 178 (1st Dep't 1996).

In her motion to remand, the Attorney General demonstrated that the AG Action relates to "matters of safety and welfare" because it will protect minors, vulnerable adults, and the Diocese's 600,000 members.  Dkt. 16, at 5-6, 10-12.  Defendants do not refute this showing, but rather assert, without citing any authority, that the safety-and-welfare test does not apply.  Opp. at 16.  Defendants also argue that the Attorney General seeks to show violations of Church policies rather than of New York law.  But the Complaint demonstrates that this is not the case. Defendants' violations of their own policies aimed at combatting sexual abuse—a problem that

3

is not ecclesiastical in nature—demonstrate that they have breached their secular duties and improperly administered the Diocese.  Moreover, the Complaint does not merely point to violations of Defendants' sexual abuse policies but also alleges numerous other ways in which Defendants failed to act in accordance with secular standards of care.[1]  *See* pp. 1-2, *supra*; Compl. ¶¶ 60-63.

> **B.   Defendants Do Not Dispute that the Framework of Federal Removal Laws Rejects Their Interpretation of the General Removal Statute.**

Defendants argue that because federal courts have original jurisdiction of cases "related to" bankruptcies, the AG Action may be removed under 28 U.S.C. § 1441, the general removal statute.  In her remand motion, the Attorney General demonstrates why this result is not supported by the statutory framework for removal and remand of actions, including actions to enforce police powers under state law.  Defendants fail to challenge this point.  Indeed, the Second Circuit decision relied on by Defendants provides more support for the Attorney General's interpretation of the removal statutes.  In *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004), the Second Circuit reviewed legislative history and correctly recognized that §§ 1452 and 1334 are the "bankruptcy removal provisions" and are "properly . . . viewed as parts of the Bankruptcy Code."  *Id.* at 96-97.  Defendants should not be permitted to rely on § 1441—a statute outside the Bankruptcy Code and outside the bankruptcy statutory framework—to avoid the police-power exception, a critical provision within that framework.

Similarly, the U.S. Supreme Court's ruling in *Things Remembered, Inc. v. Petrarca*, 516

---

[1] Defendants' Exhibit A highlights (by bolding) portions of 115 paragraphs of the Complaint that allege violations of Church policies.  Dkt. 22, Ex. A.  Yet more than half of these paragraphs include allegations that solely rest on secular duties without any reliance on Defendants' policies.  Exhibit A also ignores how pages 44-203 of the Complaint marshal Defendants' documents to show they repeatedly violated *both* their policies and related secular duties.  Indeed, a comparison of the bolded and non-bolded allegations in Exhibit A demonstrates that the Complaint's "Causes of Action" do not rely only on Defendants' policies.  *Id.* at rows 107-15.

U.S. 124 (1995), highlights the importance of cohesion within statutory frameworks.  There, a private plaintiff, not a state attorney general, sued to recover rent.  The defendant filed for bankruptcy and removed the action to federal district court under the bankruptcy and general removal statutes.  The federal district court held that removal was untimely under both statutes, and the Sixth Circuit affirmed.  The Supreme Court affirmed, holding that § 1447(d) barred appellate review regardless of whether the action had been removed under the general or bankruptcy removal statutes because "[t]here is no reason §§ 1447(d) and [1452, the bankruptcy removal statute, could not] comfortably coexist in the bankruptcy context."  *Id.* at 129.

In this case, however, the bankruptcy removal statute, § 1452, and Defendants' reading of the general removal statute, § 1441, "cannot comfortably coexist in the bankruptcy context." Under Defendants' interpretation of § 1441, a state-court, government action against a debtor to address matters of safety and welfare, such as securities law violations, environmental damage, unsafe vehicles, or the failure to protect children may be removed by a debtor so long as the debtor removes under § 1441 and not § 1452.  This result would be inconsistent with the bankruptcy framework because it would render the police-power exception to removal under § 1452(a) meaningless and could not have been Congress's intent when establishing that express exception.  As a result, Defendants' statutory construction should not be sanctioned, and this action should be remanded pursuant to the police-power exception, § 1452(a).

### C.    Section 1334(c)(2) Requires This Court to Abstain from Hearing the Attorney General's Claims.

The mandatory abstention rule set forth in § 1334(c)(2) expressly prohibits the assertion of federal jurisdiction over state law cases, like this one, that are merely bankruptcy-related.  The expansive interpretation of "related to" jurisdiction as including anything that could "conceivably affect" the bankruptcy estate is tempered by § 1334(c)(2), which specifies circumstances in which courts *must* abstain from hearing state law claims even if they are

"related to" a bankruptcy proceeding." *BGC Partners, Inc.* v. *Avison Young (Canada), Inc.*, 919 F. Supp. 2d 310, 314, 320 (S.D.N.Y. 2013) (applying § 1334(c)(2) to remand where the only federal issue identified was a proposed preemption defense and explaining that "there is no question that state courts are best positioned to interpret and apply state law"). The Complaint meets each of the tests to trigger this control: the action was brought in state court and asserts exclusively state law claims; Defendants' proposed constitutional argument that no regulatory claim may be asserted against it arises only as a defense; § 1334 provides the sole basis for federal jurisdiction; and the action can be timely adjudicated in state court. Defendants do not demonstrate otherwise and so the Court must abstain from hearing this case. *Multibank, Inc.* v. *Access Global Capital LLC*, 594 B.R. 618, 629 (Bankr. S.D.N.Y. 2018) ("It is the Debtors' burden to show that mandatory abstention is not applicable, including the burden of proving that a matter could not be timely adjudicated in the state court").

Defendants cannot distinguish this case by misstating the nature of the Attorney General's claims or the burden to be applied on a remand motion. The Complaint applies the standards of institutional responsibility stated in the New York law governing charitable religious organizations to Defendants' response to an admitted sexual abuse crisis. The four claims asserted are, in fact, "based on exclusively state law standards," about which New York State courts do have special expertise, and the question of whether the Attorney General has proven a violation of those standards will not be a "predominantly" federal question as Defendants contend. Opp. at 23. Nor does the Attorney General's Complaint indicate a litigation so complex, and so closely intertwined with bankruptcy issues, that it cannot successfully be heard in state court. This is an action brought solely under New York state law, by the Attorney General, to enforce her police and regulatory powers for the safety and benefit of

New Yorkers; it presents precisely the type of core state action and interest that Congress identified as ineligible for inclusion in a bankruptcy's broad sweep.

The Second Circuit's recent treatment of mandatory abstention does not, as Defendants assert, require the Attorney General to submit evidence of efficiency in the state court system to justify the application of § 1334(c)(2). The Second Circuit has specifically observed that allocating a burden of proof to the party seeking remand may contradict the "mandatory nature of abstention under § 1334(c)(2) as well as the principles of comity, which presume that a state court will operate efficiently and effectively." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 582 (2d Cir. 2011). District courts considering mandatory abstention in this Circuit since *Parmalat* have interpreted that language to place the burden of proof in an abstention analysis on the party *opposing* remand, just as it lies in any other remand analysis. *See, e.g.*, *In re AOG Enter., Inc.*, 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017); *Multibank*, 594 B.R. at 629; *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 711 (S.D.N.Y. 2013). Both cases cited in the Opposition to urge otherwise predate *Parmalat* and its application.

### D.   The Discretionary Review Preserved by Sections 1334(c)(1) and 1452(b) Separately Calls For Remand.

Even if the Court determines that it is not barred from hearing this case, discretionary review prescribes remand. Sections 1334 and 1452 empower this Court to consider, in equitable terms, whether the regulatory claims asserted by the Attorney General are properly considered in the original state forum to which they were brought. Each of the factors developed to guide that analysis weighs in favor of remand: the Attorney General asserts exclusively state law claims against a New York religious corporation in the exercise of her statutorily-granted regulatory power and in the service of a public benefit. Defendants entirely mischaracterize the nature of this action when they assert that it "is not substantively predicated on New York law at all."

7

Opp. 25.  Nor do Defendants apply the factors they highlight for this Court's review, including the effect or lack thereof on the efficient administration of a bankruptcy estate and the extent to which state law issues predominate.  *Id.*  Because Defendants have "not articulated any plausible way in which this action will affect the efficient administration of the" bankruptcy estate, and the Attorney General's claims exclusively involve state law, "[c]omity considerations favor remand . . . because '[i]t is well-settled that [those] considerations dictate that federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate.'"  *Sealink Funding Ltd.* v. *Bear Stearns & Co.*, 2012 WL 4794450, at *4 (S.D.N.Y. 2012).

## II.   DEFENDANTS DO NOT DISPUTE THAT A FIRST AMENDMENT DEFENSE DOES NOT CREATE FEDERAL SUBJECT-MATTER JURISDICTION.

Defendants mischaracterize the claims in the Complaint to argue that the AG Action is not a valid exercise of police power and instead seeks to enforce Church policies in a manner that infringes upon the First Amendment.  As set forth above, the argument that this action does not involve the exercise of police powers is meritless.  The argument that a federal court is a more appropriate forum because of a First Amendment defense that Defendants have asserted is equally deficient; it is well established that "a case may not be removed to federal court on the basis of a federal defense."  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14 (1983).  Defendants do not challenge this argument or the related argument that there is no federal-question jurisdiction here because of the well-pleaded complaint rule.  Dkt. No. 16, at 14.

## III.   THE ATTORNEY GENERAL DID NOT WAIVE OBJECTIONS BY COMPLYING WITH COURT-ORDERED PROCEDURES FOR THIS MOTION.

Defendants argue that the Attorney General waived her right to seek remand based on the absurd claim that the Attorney General was dilatory when, in fact, she always acted promptly. On January 25, sixteen days after Defendants removed the case, the Attorney General wrote a pre-conference letter to the Court that set forth the bases for her remand motion.  Her compliance

with rules that required a pre-motion conference before Judge Crotty and her submission of a brief in accordance with the schedule set by this Court upon reassignment cannot reasonably be characterized as waiving arguments that she had already identified and to which the Diocese responded in detail in its own pre-conference letter on January 28.  Defendants do not identify any judicial decision or rule of this Court that supports such a result.

The statutory timeline for moving to remand on procedural grounds exists to ensure quick resolution of a removal challenge so that the case may proceed without undue delay caused by the removal itself.  Defendants do not distinguish in their waiver argument between the basis for remand provided by § 1452 and the Attorney General's arguments for mandatory abstention or equitable remand.  The latter represent jurisdictional arguments not subject to the 30-day timeline contemplated by § 1447.  *Fried*, 496 B.R. at 712 (motions to abstain pursuant to 28 U.S.C. §§ 1334 & 1452(b) are not subject to the thirty–day limit of § 1447(c) because "[a]bstention motions do not concern removal procedure, but instead whether a court will exercise the jurisdiction it has").

The Attorney General has consistently pursued prompt consideration of her objections to removal.  She identified each of the bases for her present motion through the mandatory pre-motion letter required by Judge Crotty.  Dkt. No. 5.  That January 25 letter expressly noted that the Attorney General sought to move on or before February 8, 2021, thirty days after removal. Three days after the letter was filed, Judge Crotty notified the parties that he would convene his conference on February 11, thirty-three days after removal.  Dkt. No. 9.  Defendants now take the extraordinary position that the Attorney General was required to move by February 8, in direct contravention of Judge Crotty's pre-motion conference Order, to preserve the objections articulated in her January 25 letter and now included in her opening brief.

The Attorney General also promptly responded to each scheduling change occasioned by

this case's transfer and sought guidance from this Court immediately upon reassignment. Dkt. No. 11. This Court confirmed on February 10 that no pre-motion conference was required and expressly granted the Attorney General's request to file her opening brief by February 22, without objection from Defendants. The Attorney General timely submitted her opening brief in accordance with that Court-approved schedule for the briefing of the motion.

The substantive function served by a remand deadline is prompt notice to the removing party of the grounds on which its removal will be challenged. In *Siverls-Dunham*, the Court applied that standard to prohibit the assertion of a new basis for remand two months after the plaintiff filed a letter request for permission to move. Defendants cite that case as analogous to this one, but no such switch exists here: in her timely letter seeking leave to move, the Attorney General outlined the same objections to removal that she now relies on, and Defendants responded three days later with the same reading of § 1441 that it now states in its Opposition. The letters submitted to Judge Crotty in January operated exactly as the Court approved in *Siverls-Dunham*. Defendants' argument that § 1441 permits removal does not form a basis for the Attorney General's motion, and the Attorney General's decision to clarify why the police-power exception on which she relies must overcome the general removal statute does not convert her argument under §§ 1452 and 1334(c) into a new basis for remand.

## <u>CONCLUSION</u>

For all of the above reasons, the Attorney General respectfully requests that this action be remanded to New York State Supreme Court.

Dated:      New York, New York
            March 25, 2021

                                        LETITIA JAMES
                                        Attorney General of the State of New York

By:   s/ Emily Stern
      James Sheehan
      Emily Stern
      Daniel Roque
      Catherine Suvari
      emily.stern@ag.ny.gov
      28 Liberty Street
      New York, New York 10005
      (212) 416-6241